# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KUSUMA NIO<br>2400 Checkerberry Lane<br>Springfield, Illinois 62711, | ) <br> ) <br> ) <br> ) |
| WANJING LI<br>5855 Washington Boulevard, Apt. 2C<br>St. Louis, Missouri 63112, | ) <br> ) <br> ) <br> ) |
| JAE SEONG PARK<br>5482 Jackson Boulevard,<br>A CO 1-13th Fort Jackson<br>Columbia, South Carolina 29207, | ) <br> ) <br> )   **No.**<br> ) <br> ) |
| HAENDEL CRIST CALISTO ALVES DE<br>ALMEIDA<br>115-117 66th Street<br>West New York, New Jersey 07093, | ) **COMPLAINT AND PRAYER FOR**<br> ) **DECLARATORY, PRELIMINARY**<br> ) **AND PERMANENT INJUNCTIVE,**<br> ) **ADMINISTRATIVE PROCEDURE**<br> ) **ACT, AND MANDAMUS RELIEF** |
| PRASHANTH BATCHU<br>809 22nd Street, Apt. 1104<br>Union City, New Jersey 07087, | ) <br> ) <br> ) <br> ) |
| LUCAS CALIXTO<br>21 Franklin Street, Apt. 15<br>Somerville, Massachusetts 02145, | ) <br> ) <br> ) <br> ) |
| SHU CHENG<br>5438 Baldwin Avenue<br>Tempe City, California 91780, | ) <br> ) <br> ) <br> ) |
| SEUNG JOO HONG<br>18921 Highstream Drive<br>Germantown, Maryland 20874, | ) <br> ) <br> ) <br> ) |
| YE LIU<br>1892 Willoway Circle S.<br>Columbus, Ohio 43220, | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

1

EMEKA UDEIGWE                                    )
13855 Superior Road, Apt. 2410                   )
Cleveland, Ohio 44118,                           )
                                                 )
on behalf of themselves and those similarly      )
situated,                                         )
                                                 )
                    PLAINTIFFS,                   )
                                                 )
v.                                               )
                                                 )
UNITED STATES DEPARTMENT OF                      )
HOMELAND SECURITY                                )
3801 Nebraska Avenue, NW                          )
Washington, DC 20016,                            )
                                                 )
JOHN KELLY, in his official capacity as          )
Secretary of the United States Department of     )
Homeland Security                                )
3801 Nebraska Avenue, NW                          )
Washington, DC 20016,                            )
                                                 )
UNITED STATES CITIZENSHIP AND                    )
IMMIGRATION SERVICES                             )
20 Massachusetts Avenue, NW                       )
Washington, DC 20008,                            )
                                                 )
JAMES MCCAMENT, in his official capacity as      )
Acting Director of the United States Citizenship )
and Immigration Services                         )
20 Massachusetts Avenue, NW                       )
Washington, DC 20008,                            )
                                                 )
UNITED STATES DEPARTMENT OF                      )
DEFENSE                                          )
1000 Defense Pentagon                             )
Washington, DC 20301,                            )
                                                 )
JAMES MATTIS, in his official capacity as        )
Secretary of Defense of the United States        )
Department of Defense                            )
1000 Defense Pentagon                             )
Washington, DC 20301,                            )
                                                 )
                    DEFENDANTS.                   )

## **COMPLAINT**

1.          Plaintiffs are enlisted non-citizen United States Army soldiers who are serving

honorably in the Selected Reserve of the Ready Reserve ("Selected Reserve").  Defendants are

depriving Plaintiffs of their lawful opportunity and right to become naturalized United States

citizens.  As set forth below, by virtue of their honorable service in the Selected Reserve, federal

law, including 8 U.S.C. § 1440, specifies that each Plaintiff-soldier is entitled to prompt

processing of his/her application to become a naturalized United States citizen.  Yet, Defendants

are not processing these naturalization applications as required by law.  Instead, via improper

inter-agency instructions and other unlawful means, Defendants are impeding and delaying the

naturalization of these soldiers by imposing on them additional citizenship qualifications/criteria

which have no lawful basis.  And, by so doing, Defendants are acting unlawfully and depriving

Plaintiffs of the valuable rights due to them under the law.  Through this action, on behalf of

themselves and all similarly situated United States soldiers, Plaintiffs seek injunctive,

declaratory, and other relief from this Court in order to compel and enjoin Defendants as

necessary to allow for the processing of Plaintiffs' naturalization applications as required by law.

2.          The United States recruited and enlisted each Plaintiff into the Armed Forces of

the United States under the Military Accessions Vital to the National Interest ("MAVNI")

program, a program touted by Defendant United States Department of Defense ("DoD") as "vital

to the national interest," under which certain non-U.S. citizens with critical language skills and/or

specialized medical training enlist and serve in the United States Armed Forces.  DoD recruits

individuals into the MAVNI program by, among other things, representing that enlistees will be

granted an "expedited" path to U.S. citizenship via naturalization.  Indeed, DoD mandates – via

written enlistment contracts – that Plaintiffs and other MAVNI recruits apply for U.S. citizenship

as soon as the service branch (*e.g.*, the Army) has certified their honorable service.

3.      Each Plaintiff-soldier has kept his/her end of the bargain.  Equipped with the

specialized skills – such as medical training and foreign language capabilities – sought by

military leaders to fill critical personnel needs, each Plaintiff (a) enlisted in the Army, (b) is

serving honorably, and (c) has applied for naturalization with Defendant United States

Department of Homeland Security ("DHS").  As enlisted soldiers in the Selected Reserve,

Plaintiffs are obliged to serve and proudly stand ready to be called to active duty in the service of

this Nation at the direction of their military commanders.

4.      However, in violation of federal law, including 8 U.S.C. § 1440, Defendants have

reneged on the representations made to these soldiers and are failing to process their

naturalization applications as the law requires.  Thus, Defendants are blocking and delaying the

valuable benefit afforded by law to these highly sought after military enlistees – namely, the

prospect of expedited United States citizenship.

5.      Among other actions, DoD improperly has instructed DHS and its component

agency, Defendant United States Citizenship and Immigration Services ("USCIS"), to place

Plaintiffs' naturalization applications on "hold" pending the successful completion of specialized

background investigations done by the military for DoD purposes (and not required by the laws

governing naturalization).  There is no lawful basis for DoD's instruction and interference, nor is

there any legal basis for DHS to permit or acquiesce in such interference.  On information and

belief, the military security clearance criteria being applied to Plaintiffs' naturalization

applications have never before been applied to citizenship applications.  In fact, this new and

additional screening being imposed by DoD (and enabled by DHS) has nothing to do with

citizenship eligibility, but instead is reserved for persons applying for high-level governmental security clearances.  In other words, there is no U.S. law that conditions naturalization on an applicant's ability to obtain a high-level security clearance, yet Defendants are imposing – or, at a minimum, acquiescing in the imposition of – that condition on Plaintiffs.  As a result of this unlawful conduct, Plaintiffs are facing irreparable harm due to the delayed and uncertain processing of their naturalization applications.

6.      On information and belief and for the reasons alleged herein, the enhanced scrutiny and interference by Defendants are not unique to the named Plaintiffs, nor does the conduct arise out of any particular security or other concern specific to these Plaintiffs; indeed, each Plaintiff believes that he/she is eligible to be naturalized and would be naturalized but for the Defendants' "hold" on the processing of their applications.  Instead, Defendants' conduct appears to be a recent policy change applicable to MAVNI recruits who have applied for – or are eligible to apply for – naturalization but have not yet been granted citizenship.  Accordingly, Plaintiffs bring this civil action on behalf of themselves in their individual capacities, and on behalf of a class of all similarly-situated individuals, to obtain Administrative Procedure Act ("APA"), mandamus, declaratory, and preliminary and permanent injunctive relief to compel and enjoin Defendants so that they comply with their statutory obligations pursuant to federal law, including 8 U.S.C. § 1440, to properly and timely act upon, and to otherwise cease interfering with, the processing of Plaintiffs' naturalization applications.

## JURISDICTION

7.      This action arises under the Immigration and Nationality Act of 1952 ("INA") at 8 U.S.C. § 1440.  This Court has jurisdiction over this action under 28 U.S.C. § 1346 (United

States as defendant); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 2201 (declaratory

judgment); and the Mandamus Act, 28 U.S.C. § 1361.

## VENUE

8.      Venue is proper in the Court under 28 U.S.C. § 1391(e) because Defendants John

Kelly, James McCament, and James Mattis are officers of the United States acting in their

official capacities, and the United States Department of Homeland Security, the United States

Citizenship and Immigration Services, and the United States Department of Defense are all

present in this district.  Further, Gen. Kelly, Mr. McCament, and Gen. Mattis perform official

duties in Washington, D.C.

## PARTIES

9.      Plaintiff Dr. Kusuma Nio resides in Springfield, Illinois.  Dr. Nio enlisted in the

Selected Reserve through the MAVNI program in August 2015 and serves with the 1st Forward

Surgical Team in Fort Hamilton, New York.

10.     Plaintiff Wanjing Li resides in St. Louis, Missouri.  Ms. Li enlisted in the Selected

Reserve through the MAVNI program in February 2016 and serves with the 325th Combat

Support Hospital.

11.     Plaintiff Jae Seong Park resides in Fort Jackson, South Carolina.  Mr. Park

enlisted in the Selected Reserve through the MAVNI program in October 2015, completed Basic

Combat Training ("BCT") at Fort Jackson, South Carolina in December 2016, and remains on

active-duty status at Fort Jackson awaiting assignment to further training.

12.     Plaintiff Haendel Crist Calisto Alves de Almeida resides in West New York, New

Jersey.  Mr. Almeida enlisted in the Selected Reserve through the MAVNI program in May 2016

and serves with the 405th Combat Support Hospital located in West Hartford, Connecticut.

13.     Plaintiff Prashanth Batchu resides in Union City, New Jersey.  Mr. Batchu enlisted in the Selected Reserve through the MAVNI program in June 2016 and serves with 419th Transportation Company.

14.     Plaintiff Lucas Calixto resides in Somerville, Massachusetts.  Mr. Calixto enlisted in the Selected Reserve through the MAVNI program in February 2016 and serves with the 743rd Transportation Company in Roslindale, Massachusetts.

15.     Plaintiff Shu Cheng resides in Temple City, California.  Ms. Cheng enlisted in the Selected Reserve through the MAVNI program in February of 2016 and serves with the 349th Combat Support Hospital in Bell, California.

16.     Plaintiff Seung Joo "Josh" Hong resides in Germantown, Maryland.  Mr. Hong enlisted in the Selected Reserve through the MAVNI program in May 2016 and serves with the 392nd Signal Battalion.

17.     Plaintiff Ye Liu resides in Columbus, Ohio.  Mr. Liu enlisted in the Selected Reserve through the MAVNI program in March 2016 and serves with the 1001st Quartermaster Company in Columbus, Ohio.

18.     Plaintiff Emeka Udeigwe resides in Cleveland, Ohio.  Mr. Udeigwe enlisted in the Selected Reserve through the MAVNI program in March 2016 and serves with the 463rd Engineer Battalion unit in Wheeling, West Virginia.

19.     Defendant United States Department of Homeland Security is responsible for the administration and enforcement of immigration laws of the United States.

20.     Defendant John Kelly is sued in his official capacity as Secretary of the United States Department of Homeland Security.  As Secretary of DHS, Gen. Kelly is responsible for the administration and enforcement of immigration laws of the United States.

21.     Defendant United States Citizenship and Immigration Services is responsible for the overall administration and the implementation of the immigration laws of the United States.

22.     Defendant James McCament is sued in his official capacity as Director of the United States Department of Homeland Security, United States Citizenship and Immigration Services (Acting).  As Acting Director of USCIS, Mr. McCament is responsible for the overall administration of USCIS and the implementation of the immigration laws of the United States.

23.     Defendants DHS, Gen. Kelly, USCIS, and Mr. McCament are collectively referred to as the "DHS Defendants."

24.     Defendant United States Department of Defense is responsible for the overall administration of military policy, which includes the MAVNI program.

25.     Defendant James Mattis is sued in his official capacity as Secretary of Defense of the United States Department of Defense.  As Secretary of Defense, Gen. Mattis is responsible for the overall administration of DoD, which includes the MAVNI program.

26.     Defendants DoD and Gen. Mattis are collectively referred to as the "DoD Defendants."

## BACKGROUND AND FACTS

### The MAVNI Program and Plaintiffs' Service Commitments

27.     Typically, U.S. Armed Forces enlistees must meet U.S. citizenship or permanent residence requirements.  10 U.S.C. § 504(b).  However, 10 U.S.C. § 504(b)(2) authorizes the Secretary of Defense and the Secretaries of the military service departments to enlist certain non-U.S. citizens and non-permanent residents if enlistment of such individuals is "vital to the national interest."  Under this authority, DoD initiated the MAVNI program in 2008.

28.     The MAVNI program is designed to attract two types of recruits into the military: (a) health care professionals and (b) individuals who possess critical foreign language skills. DoD officials acknowledge that soldiers with these skills "are necessary to sustain effective military operations."  The MAVNI pilot program was initiated in 2008, and operated from 2009 through the present, with brief interruptions and enlistment suspension periods.

29.     Under MAVNI, DoD encouraged qualified individuals to enlist, in large part, by touting the opportunity of an "expedited" path to U.S. citizenship, and, DoD even has contractually mandated that MAVNI enlistees – including Plaintiffs – apply for citizenship "as soon as the [service branch (*e.g.*, the Army)] has certified [the MAVNI recruit's] honorable service."  This citizenship opportunity was a powerful enticement to Plaintiffs and other such qualified individuals who contemplated MAVNI enlistment.

30.     Plaintiffs are soldiers who possess the skills deemed vital by the DoD, enlisted under the MAVNI program, signed MAVNI enlistment contracts, and are serving honorably in the Selected Reserve.  Each Plaintiff has taken the military service oath.  Each Plaintiff's enlistment contract obligates him/her to eight years of service in the Army Reserve, six years of which must be served in the Selected Reserve.  Each Plaintiff has been assigned to a U.S. Army Selected Reserve unit and each has served with his/her unit by participating in multiple Selected Reserve drill periods or by serving in an active-duty status.  Finally, a responsible and authorized Army official has executed a Form N-426 for each Plaintiff, certifying his/her honorable service in the military as a member of the Selected Reserve.

31.     The commitment that each Plaintiff has undertaken to serve as a soldier in the U.S. Army Reserve is serious and substantial.  As the standard MAVNI Army Reserve enlistment contract states, an agreement to enlist "is more than an employment agreement.  It

effects a change in status from civilian to military member of the Armed Forces." As such, per the Enlistment/Reenlistment Document Armed Forces of the United States (DD Form 4/1), each soldier (a) is "[r]equired to obey all lawful orders and perform all assigned duties," (b) is "[s]ubject to the military justice system" and, among other things, "may be tried by military courts-martial," (c) may be "[r]equired upon order to serve in combat or other hazardous situations," and (d) must otherwise "meet acceptable military standards" such that any failure to meet their service obligations as Selected Reservists can result in demotion and/or discharge from the service under other than honorable conditions.

32.     As a member of the Army Reserve, each soldier "may at any time, and without [his/her] consent, be ordered to active duty to complete a total of 24 months of active duty." In times of war or national emergency declared by Congress, these soldiers "may, without [his/her] consent, be ordered to serve on active duty for the entire period of the war or emergency and for six (6) months after its end." As members of the Selected Reserve, these soldiers may, without their consent, be ordered to 365 days of consecutive active duty whenever "the President determines that it is necessary to augment the active forces for any operational mission or for certain emergencies."

33.     Finally, as members of the U.S. military, Plaintiffs may be required to compromise individual liberties that are considered fundamental in ordinary American society. As their enlistment contracts provide, a service member's freedom of religious expression may be curtailed: "I understand that the Army cannot guarantee accommodation of religious practices, and that religious accommodations may be modified or revoked based on changes in military necessity." A service member's freedom of speech, expression, and association also may be curtailed. Consequently, prior to enlistment, the Army provides recruits with

USMEPCOM Form 601-23-4 – "Restrictions on Personal Conduct in the Armed Forces" –

which specifies that military service entails behavioral limitations not applicable to civilians in

America:

> Military life is fundamentally different from civilian life.  The
> military has its own laws, rules, customs, and traditions, including
> numerous restrictions on personal behavior, that would not be
> acceptable in civilian society.  These are necessary because military
> units and personnel must maintain high standards for morale, good
> order and discipline, and unit cohesion that are essential for combat
> effectiveness.

### The Statutory and Regulatory Framework Applicable
### to Plaintiffs' Naturalization Applications

34.     The statutory and regulatory framework applicable to Plaintiffs is plain and

simple.  The INA, at 8 U.S.C. § 1440(a), provides that

> [a]ny person who, while an alien or a noncitizen national of the
> United States, has served honorably as a member of the Selected
> Reserve of the Ready Reserve or in an active-duty status in the
> military, air, or naval forces of the United States . . . during any . . .
> period which the President by Executive order shall designate as a
> period in which Armed Forces of the United States are or were
> engaged in military operations involving armed conflict with a
> hostile foreign force . . . may be naturalized as provided in this
> section . . . .

35.     On July 3, 2002, the President determined by Executive Order that the military is

engaged in armed conflict for the purposes of 8 U.S.C. § 1440.  Exec. Order No. 13269, 67 Fed.

Reg. 45,287 (July 3, 2002).  Executive Order No. 13269 has remained in effect through the

present.

36.     The purpose of Section 1440 is to ease the path to U.S. citizenship for those

willing to volunteer to serve in the Selected Reserve or on active duty in the United States Armed

Forces during a time of armed conflict.  A service member qualifies for naturalization under this

section with honorable service "as a member of the Selected Reserve of the Ready Reserve *or* in an active-duty status."  8 U.S.C. § 1440 (emphasis added).  This disjunctive language of the statute is clear and unequivocal:  Selected Reserve status alone qualifies a person to naturalize, and citizenship is not dependent on an individual performing active-duty service.

37.     The statute eases the path to citizenship in at least three specific ways.  First, service members may be naturalized "regardless of age, and notwithstanding the provisions of section 1429 of this title as they relate to deportability and the provisions of section 1442 of this title."  8 U.S.C. § 1440(b)(1).  Second, "no period of residence or specified period of physical presence within the United States or any State or district of the Service in the United States shall be required."  8 U.S.C. § 1440(b)(2).  Third, "no fee shall be charged or collected from the applicant for filing a petition for naturalization or for the issuance of a certificate of naturalization" granted under this section.  8 U.S.C. § 1440(b)(4).

38.     The military's role under the statute is wholly ministerial.  The service member's executive department (*i.e.*, service branch) merely certifies to DHS – the agency responsible for conferring citizenship – the service member's honorable service.

39.     The service member's statutory obligation to serve honorably does not terminate upon gaining U.S. citizenship.  On the contrary, the statute contains an express revocation provision that provides, in pertinent part, the following:  "Citizenship granted pursuant to this section may be revoked in accordance with section 1451 of this title if the person is separated from the Armed Forces under other than honorable conditions before the person has served honorably for a period or periods aggregating five years."  8 U.S.C. § 1440(c).  Thus, service members granted citizenship under 8 U.S.C. § 1440 must continue to honorably meet their

service obligations for a period of at least five years, or their citizenship is subject to potential revocation.

40.     The regulations implementing 8 U.S.C. § 1440 are located at 8 C.F.R Part 329, entitled "SPECIAL CLASSES OF PERSONS WHO MAY BE NATURALIZED: PERSONS WITH ACTIVE DUTY OR CERTAIN READY RESERVE SERVICE IN THE UNITED STATES ARMED FORCES DURING SPECIFIED PERIODS OF HOSTILITIES."  Section 329.2 provides that a service member is eligible for naturalization under 8 U.S.C. § 1440 upon establishing that he or she has "served honorably in the Armed Forces of the United States as a member of the Selected Reserve of the Ready Reserve or in an active duty status in the Armed Forces of the United States during . . . [a]ny other period as may be designated by the President in an Executive Order pursuant to section 329(a) of the Act . . . ."  Like the statute, the disjunctive language of the implementing regulations makes clear that "active duty service" is not required if the soldier has served in the Selected Reserve.

41.     Volume 12 of the USCIS Policy Manual, the agency's centralized repository for USCIS's immigration policies, explains the laws and policies that govern United States citizenship and naturalization, and further confirms that service in the Selected Reserve counts as qualifying service; indeed, "[o]ne day of qualifying service is sufficient in establishing eligibility."  USCIS Policy Manual Volume 12, Part I, Chapter 3, dated January 5, 2017.

42.     The regulations also confirm that the honorable service requirement can be satisfied either through current service that is honorable or a separation from military service under honorable conditions: "*[h]onorable service and separation* means service and separation from service which the executive department under which the applicant served determines to be honorable . . . ."  8 C.F.R 329.1 (emphasis in original).  The service department "under which the

13

applicant served or is serving" certifies the member's honorable service to USCIS officials.   8

C.F.R. 329.4.

43.     USCIS has established an official form for this purpose – USCIS Form N-426

(Request for Certification of Military or Naval Service) – wherein the military service branch

certifies whether or not the applicant is serving or has served honorably.

44.     Notably, the Army recited the statutory framework for citizenship in the standard

enlistment contract that each Plaintiff signed:

> 3. I understand that I am enlisting under a federal law that allows
> the Secretary of the Army to authorize the enlistment of certain
> non-citizens of the United States (10 U.S.C. 504(b)(2)).   I also
> understand that I am enlisting during a period of time in which any
> alien who serves honorably as a member of the Selected Reserve of
> the Ready Reserve or in an active-duty status in the military, air or
> naval forces of the United States may apply for United States
> Citizenship (8 U.S.C. 1440).
>
> 4. In exchange for being permitted to enlist in the Army, I agree to
> apply for U.S. citizenship as soon as the Army has certified my
> honorable service.  I understand that the Army does not grant U.S.
> citizenship, and the Army does not guarantee that my application
> for U.S. citizenship will be approved.

**Defendants' Violations of Applicable Law**

45.     Plaintiffs have upheld their end of the bargain under the law and their enlistment

contracts.  They possess the language and/or medical skills deemed critical by DoD.  They

enlisted as members of the Selected Reserve during a period of armed conflict, thereby serving a

"vital national interest."  They are serving honorably.  And, they have applied to become

naturalized United States citizens.

46.     Defendants have failed to fulfill their statutory and regulatory duties.  Instead of

providing an "expedited" path to citizenship, DoD (as described below) improperly has

instructed DHS to suspend the processing of Plaintiffs' naturalization applications.   This

instruction is unlawful because it exceeds DoD's lawful authority and interferes with DHS's

duties.   In fact, DoD's (and its military service departments') sole role in Plaintiffs'

naturalization process is ministerial.   The relevant military department simply certifies whether

the service member seeking naturalization is serving, or has served, honorably.

47.   For each Plaintiff, the Army already has performed this ministerial function by

executing N-426 forms confirming that each Plaintiff has fulfilled the honorable service

requirement.   DoD has no further role in the naturalization application process.   DoD may not

direct DHS to suspend or "hold" Plaintiffs' naturalization applications to impose additional

military conditions or requirements for naturalization.

48.   On September 30, 2016, the Under Secretary of Defense for Personnel and

Readiness (Acting) promulgated policy guidance directing the military departments to delay

orders to active-duty training for MAVNI enlistees until DoD completed security clearance

investigations, such as Tier 5 (formerly known as SSBI) investigations and Counterintelligence

Security Interviews, for such enlistees.   And, notwithstanding its sharply limited role in the

naturalization process for Plaintiffs per statute – *i.e.*, the confirmation of honorable service – in

an improper attempt to insert itself into the naturalization process, DoD (and its service branch,

the Army) instructed DHS to stop processing MAVNI Applications for Naturalization pending

completion of the security clearance investigations.   For its part, DHS complied with, or

acquiesced in, DoD's improper instruction and halted the processing of all MAVNI

naturalization applications contrary to its duties under law.   The result has been a cessation and

delay in the processing of Plaintiffs' naturalization applications for an impermissible and

unlawful reason.   On information and belief, prior to September 30, 2016, the naturalization

applications of MAVNI service members were processed to completion, and citizenship was conferred, without such DoD security clearance investigations.

49.     Since September 2016, numerous officials (from both DoD and USCIS) have admitted that DHS has implemented this "hold" pursuant to DoD's instruction.  For example, in response to a Congressional inquiry on behalf of a MAVNI service member whose naturalization application had been delayed, a USCIS field office reported on March 14, 2017 that "Ms. [X's] case is pending due to military background checks required by the Department of Defense. USCIS is unable to render a decision on Ms. [X's] application at this time."  Another Supervisor at a USCIS field office confirmed on April 2017 that there was a "new DoD memo" issued in recent months stating that all applications from MAVNI soldiers who have not started initial active-duty training are "now on hold."

50.     USCIS representatives on the "military hotline" likewise have informed MAVNI service members – including some of the Plaintiffs – that MAVNI naturalization applications have been placed on "hold" pending completion of the extensive, military-specific background investigations being imposed by DoD.  These communications from USCIS have taken place over the course of the last several months, including February, March, April, and May 2017.

51.     On February 6, 2017, a U.S. Army Human Resources Command official – who claims to have consulted with "senior DoD officials" – stated that "[t]he Army does not have any plans of letting a USAR [*i.e.*, U.S. Army Reserve] MAVNI get naturalized" before he/she is ordered to initial active-duty training upon completion of the extensive, military-specific background investigations being imposed by DoD.

52.     Neither the Army nor DoD has any legal authority to "let" or "not let" MAVNI soldiers serving honorably as members of the Selected Reserve "get naturalized."  Under the law,

the Army's role merely is to certify whether the MAVNI service member is serving, or has

served, honorably.  The Army already has made that certification, in writing, for each Plaintiff.

53.     DoD's imposition of a military-specific, uber-investigation on MAVNI soldiers is

improper to the extent that it is affecting those soldiers' ability to naturalize.  On information and

belief, the investigative protocol being imposed on the naturalization process for MAVNIs never

before has been applied to any type of application for naturalization.  Rather, the investigative

protocol being imposed typically has been used only in connection with granting security

clearances, a process separate and distinct from naturalization conditions.

54.     8 U.S.C. § 1440 does not impose security clearance screenings as part of the

naturalization process for Selected Reserve or active duty soldiers.  If Congress had intended to

mandate such an additional requirement for naturalization, it could have done so.  In fact,

Congress did the opposite, by enacting a statute that eases the naturalization requirements and

processing time for soldiers serving honorably during periods of armed conflict.  DoD's improper

instruction, and DHS's unlawful compliance with that instruction, are contrary to the plain

language and clear purpose of the statute.

**Plaintiffs' Honorable Service and Applications for Naturalization**

55.     Plaintiff Dr. Kusuma Nio enlisted in the Selected Reserve through the MAVNI

program in August 2015.  Dr. Nio is a surgeon by occupation.  Dr. Nio took his service oath on

August 12, 2015.  Dr. Nio began serving with the 1st Forward Surgical Team in Fort Hamilton,

New York, as a Specialist (E-4) in August 2016, and has since participated in multiple Selected

Reserve drill periods with his unit.  Dr. Nio submitted his N-400 Application for Naturalization

in September 2016, and USCIS received his application on September 19, 2016.  Dr. Nio's

Company Commander signed Form N-426 certifying Dr. Nio's honorable service in the Selected Reserve.

56.     After an unexplained, lengthy delay, Dr. Nio was given a naturalization interview on April 10, 2017. Upon completion of that interview, he was recommended for approval, was provided documentation to that effect, and was scheduled for a citizenship oath ceremony on May 5, 2017. However, on April 13, 2017, Dr. Nio received a "de-scheduling notice" informing him that his oath ceremony had been canceled. Dr. Nio met with immigration officers at the St. Louis Service Center, including a Field Officer Supervisor, to inquire about the reason for the cancellation of his oath ceremony and was informed that the DoD had instructed USCIS that naturalization applications for MAVNI service members such as Dr. Nio were put on hold. Following these communications, on May 7, 2017, Dr. Nio contacted his United States Senators and Representative. A staff member from United States Senator Tammy Duckworth's office inquired into the status of Dr. Nio's application and USCIS confirmed that, "Dr. Nio's case is currently pending due to military background checks required by the Department of Defense. USCIS is unable to render a decision on Dr. Nio's application at this time. Once the background checks have been completed, his case will continue through the immigration process."

57.     Plaintiff Wanjing Li enlisted in the Selected Reserve through the MAVNI program in February 2016. Ms. Li took her service oath on February 5, 2016. Ms. Li began serving with the 325th Combat Support Hospital as a Specialist (E-4) on March 19, 2016 and has since participated in multiple Selected Reserve drill periods with her unit. Ms. Li submitted her N-400 Application for Naturalization on August 17, 2016, and USCIS received her application on August 19, 2016. An authorized supervisor signed Ms. Li's Form N-426 certifying Ms. Li's honorable service in the Selected Reserve.

58.     After a lengthy delay, Ms. Li was scheduled for a naturalization interview on

March 13, 2017.  Upon completing the interview, Ms. Li was informed by the USCIS officer

conducting the interview that her application was recommended for approval.  Ms. Li has since

been told by USCIS that her naturalization application has been put on hold, as have all other

such applications by MAVNI service members.

59.     Plaintiff Jae Seong Park enlisted in the Selected Reserve through the MAVNI

program in October 2015.  Mr. Park was sent to BCT at Fort Jackson, South Carolina, in May

2016.  Mr. Park successfully completed BCT on December 15, 2016.  Mr. Park has been retained

on active-duty status at Fort Jackson awaiting assignment to further training, which has not been

provided due to pending military background checks.  Mr. Park's command at Fort Jackson

executed Form N-426 certifying Mr. Park's honorable service as a member of the Selected

Reserve.

60.     Mr. Park completed most of his naturalization requirements in May 2016,

including his naturalization interview at the local USCIS office at Fort Jackson.  Despite his

one-year long service on active duty, Mr. Park's naturalization application was placed on hold.

Mr. Park has checked on the status of his naturalization application and was told by USCIS,

through the military hotline, on February 22, 2017, that he would need to speak with local office

representatives to ascertain his status.  The local USCIS office at Fort Jackson informed him on

May 4, 2017 that his application has been put on hold pending the completion of a military

background check.

61.     Plaintiff Haendel Crist Calisto Alves de Almeida enlisted in the Selected Reserve

through the MAVNI program in May 2016.  Mr. Almeida took his service oath on May 26, 2016.

Mr. Almeida began serving with the 405th Combat Support Hospital located in West Hartford,

Connecticut as a Private (E-2) in August 2016 and since has participated in multiple Selected

Reserve drill periods with his unit.  Mr. Almeida submitted his N-400 Application for

Naturalization in February 2017 and USCIS received his application that same month.  Mr.

Almeida's Company Commander signed his Form N-426 certifying Mr. Almeida's honorable

service in the Selected Reserve.

62.     Mr. Almeida's ship date to BCT has been postponed indefinitely by direction of

the DoD.  Mr. Almeida has checked on the status of his naturalization application and was

informed by USCIS that his and other MAVNI applications have been put on hold pending

additional background investigations by the DoD.

63.     Plaintiff Prashanth Batchu enlisted in the Selected Reserve through the MAVNI

program in June 2016.  Mr. Batchu took his service oath on June 7, 2016.  Mr. Batchu began

serving with the 419th Transportation Company as a Specialist (E-4) in September 2016 and has

participated in multiple Selected Reserve drill periods with his unit.  Mr. Batchu submitted his N-

400 Application for Naturalization in March 2017 and USCIS received his application shortly

thereafter.  Mr. Batchu's Commander signed Form N-426 certifying Mr. Batchu's honorable

service in the Selected Reserve.

64.     Mr. Batchu's ship date to BCT has been postponed indefinitely by direction of the

DoD.  Mr. Batchu has checked on the status of his naturalization application and was told by

USCIS that his application has been put on hold pending additional security screening by the

DoD and that all other similar MAVNI applications are subject to the same hold.

65.     Plaintiff Lucas Calixto enlisted in the Selected Reserve through the MAVNI

program in February 2016.  Mr. Calixto took his service oath on March 16, 2016.  Mr. Calixto

began serving with the 743rd Transportation Company in Roslindale, Massachusetts as a Private

(E-1) in April 2016 and has since participated in multiple Selected Reserve drill periods with his unit.  Mr. Calixto submitted his N-400 Application for Naturalization in March 2017, and USCIS received his application on March 7, 2017.  An authorized command official signed Form N-426 certifying Mr. Calixto's honorable service in the Selected Reserve.  On April 14, 2017 USCIS requested that Mr. Calixto arrange for his command to issue another N-426, which he subsequently obtained and sent to USCIS on April 15, 2017.  USCIS confirmed receipt and informed Mr. Calixto that they did not need anything else from him at that time to process his application.

66.     Mr. Calixto's ship date to BCT has been postponed indefinitely by DoD, presumably pending completion of military background checks. Mr. Calixto has inquired about the status of his naturalization application and was informed by a USCIS officer that his case was put on hold pursuant to an instruction from DoD to not process applications for MAVNI service members who have not attended BCT.

67.     Plaintiff Shu Cheng enlisted in the Selected Reserve through the MAVNI program in February 2016.  Ms. Cheng took her service oath on February 23, 2016.  Ms. Cheng began serving with the 349th Combat Support Hospital as a Specialist (E-4) in May 2016 and has since participated in multiple Selected Reserve drills periods with her unit.  Ms. Cheng submitted her N-400 Application for Naturalization on February 27, 2017, and USCIS received her application on March 2, 2017.  Ms. Cheng's Company Commander signed Form N-426 certifying Ms. Cheng's honorable service in the Selected Reserve.

68.     Ms. Cheng has inquired about the status of her naturalization application, including by calling the Military Helpline.  On May 3, 2017, the Military Helpline confirmed that

Ms. Cheng's naturalization application was still "pending" because her military background check had not been completed.

69.     Plaintiff Seung Joo "Josh" Hong enlisted in the Selected Reserve through the MAVNI program in May 2016.  Mr. Hong took his service oath on May 13, 2016.  Mr. Hong began serving with the 392nd Signal Battalion at Fort Meade as a Private First Class (E-3) in August 2016 and has participated in multiple Selected Reserve drill periods with his unit.  Mr. Hong submitted his N-400 Application for Naturalization in February 2017, and USCIS received his application on February 28, 2017.  Mr. Hong's command signed Form N-426 certifying Mr. Hong's honorable service in the Selected Reserve.

70.     Mr. Hong's ship date to BCT has been postponed indefinitely by direction of the DoD.  Mr. Hong has checked on the status of his naturalization application and was told by USCIS that his application and all other MAVNI applications have been put on hold pending additional background investigations by the DoD.

71.     Plaintiff Ye Liu enlisted in the Selected Reserve through the MAVNI program in March 2016.  Mr. Liu took his service oath on March 16, 2016.  Mr. Liu began serving with the 1001st Quartermaster Company in Columbus, Ohio, as a Specialist (E-4) in April 2016 and has since participated in multiple Selected Reserve drill periods with his unit.  Mr. Liu submitted his N-400 Application for Naturalization in September 2016, and USCIS received his application on September 30, 2016.  An authorized command official signed Form N-426 certifying Mr. Liu's honorable service in the Selected Reserve.

72.     On multiple occasions, DoD postponed Mr. Liu's ship dates to BCT.  Mr. Liu has checked on the status of his naturalization application and has been informed by USCIS that his

application has now been put on hold until he reports to BCT, and he will not be permitted to report to BCT until completion of the newly-ordered DoD background investigations.

73.     Plaintiff Emeka Udeigwe enlisted in the Selected Reserve through the MAVNI program in March 2016.  Mr. Udeigwe took his service oath on March 17, 2016.  Mr. Udeigwe began serving with the 463rd Engineer Battalion located in Wheeling, West Virginia, as a Specialist (E-4) in January 2017 and has since participated in multiple Selected Reserve drill periods with his unit.  Mr. Udeigwe submitted his N-400 Application for Naturalization in January 2017, and USCIS received his application that same month.  Mr. Udeigwe's command signed Form N-426 certifying Mr. Udeigwe's honorable service in the Selected Reserve.

74.     Mr. Udeigwe's ship date to BCT has been postponed indefinitely by direction of the DoD.  Mr. Udeigwe has inquired about the status of his naturalization application and has been told by USCIS that his application and all other MAVNI applications have been put on hold pending additional DoD background investigations.

## Defendants' Unlawful Conduct Has Caused, and Will Continue to Cause, Substantial and Irreparable Harm to Plaintiffs

75.     Plaintiffs are suffering and will continue to suffer irreparable harm if the requested relief is not immediately granted.  Depriving U.S. service members of their opportunity to become naturalized citizens, an opportunity earned through their honorable military service and guaranteed by statute, is an ongoing and mounting harm for which there is no recompense.

76.     Furthermore, the imposition of new and impermissible naturalization requirements has led to financial distress and hardship for many Plaintiffs.  The legal immigration status of many Plaintiffs has been jeopardized by their enlistment in the U.S. military combined with the unlawful delay in naturalization.  Without the ability to obtain a job,

a driver's license, a passport (which has prevented certain Plaintiffs from visiting loved ones, including ill family members), additional educational opportunities, and the myriad of other privileges that naturalization would afford, many of these Plaintiff soldiers and their families are suffering. Further, the new uncertainty associated with their military careers, and concomitantly their legal status, is causing anguish and is particularly unconscionable given that each Plaintiff is serving during a period of armed conflict and has sworn an oath to protect and defend the United States.

## CLASS ACTION ALLEGATIONS

77. The named Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all other persons similarly situated. The named Plaintiffs seek to represent the following class:

78. Class: All individuals who have: (i) enlisted in the Selected Reserve through the MAVNI program; (ii) served honorably with a Selected Reserve unit through participation in drill periods or served in an active-duty status; (iii) submitted N-400 Applications for Naturalization; (iv) been issued Form N-426s certifying honorable service as a member of the Selected Reserve or in active-duty status; and (v) had the processing of their naturalization applications improperly placed on hold by the Defendants as described above.

79. The members of the Plaintiffs' class warrant class action treatment because they fulfill the certifying requirements under Rule 23(a) of the Federal Rules of Civil Procedure ("Rule 23(a)"). While the exact number of class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are hundreds or thousands of members in the proposed class. One DoD official has stated that as many as 10,000 individuals have been recruited through the MAVNI program.

80.      The proposed class meets the numerosity requirement of Rule 23(a)(1) because the members of the class are so numerous that joinder of all members is impractical.

81.      The proposed class meets the commonality requirement of Rule 23(a)(2) because there are questions of law and fact common to the class.  Among the questions of law and fact common to the class is whether USCIS is acting contrary to the pertinent statute and regulations by suspending processing of MAVNI applications for naturalization pending special background investigations imposed by DoD.

82.      The proposed class meets the typicality requirement of Rule 23(a)(3) because the claims of the named Plaintiffs are typical of the claims of each of the class members.  Class members similarly are affected by Defendants' wrongful conduct in violation of federal law, including 8 U.S.C. § 1440, that is described herein.

83.      The named Plaintiffs will fairly and adequately protect the interests of the class as required by Rule 23(a)(4) because their interests are identical to those of the other members of the classes.  Fair and adequate protection of the interests of the class will be further ensured because the named Plaintiffs are represented by competent legal counsel who are experienced in federal litigation, are undertaking representation on a pro bono basis, and have adequate resources and commitment to represent the class as a whole.

84.      Furthermore, as contemplated by Rule 23(b)(1), if the ten individual members of the class were to bring separate suits to address Defendants' policies, practices, and actions and inactions, Defendants may address the cases of the named Plaintiffs but ignore the naturalization applications and concerns of the remaining class members, thereby exacerbating Defendants' violations of the law.  Resolving this matter as a class action also would serve the Court's interest in judicial economy, by avoiding overburdening the Court with individual lawsuits

brought by each of the many enlistees recruited through the MAVNI program whose naturalization applications are, or will be, subject to DoD's unlawful "hold."

## CLAIMS FOR RELIEF

### Count I: Declaratory Judgment

85.     Plaintiffs re-allege paragraphs one through eighty-four as if fully set forth herein.

86.     28 U.S.C. § 2201 authorizes a court, "[i]n a case of actual controversy within its jurisdiction . . . upon the filing of an appropriate pleading" to "declare the rights and other legal relations of any interested party seeking such declaration."

87.     8 U.S.C. § 1440 establishes a clear, limited role for DoD in the naturalization process.  DoD's role simply is to verify, by way of Form N-426, whether a service member has served or is serving honorably.

88.     DoD's limited role in the naturalization process does not include performing military-specific background checks, including an SSBI/Tier 5 background investigation, as a pre-requisite to naturalization.  Notwithstanding this limited role, Defendants have halted the processing of Plaintiffs' naturalization applications on the erroneous basis that naturalization pursuant to 8 U.S.C. § 1440 is dependent on the results of a military-specific DoD background check.

89.     Accordingly, Plaintiffs seek declaratory judgment that: (i) DoD's role pursuant to 8 U.S.C. § 1440 is limited to executing Form N-426 confirming whether a service member has served or is serving honorably; (ii) the DoD background checks, including the SSBI/Tier 5, are not part of the requirements for naturalization set forth in 8 U.S.C. § 1440; and (iii) DHS may not, on the basis of DoD instruction, suspend, delay, or hold the processing of the naturalization

applications of MAVNIs with honorable service (as may be confirmed by a MAVNI's commander on Form N-426).

## Count II: Preliminary and Permanent Injunctive Relief

90.     Plaintiffs re-allege paragraphs one through eighty-four as if fully set forth herein.

91.     DoD Defendants unlawfully and improperly have instructed DHS Defendants to suspend the processing of Plaintiffs' N-400 Applications for Naturalization, and have otherwise unlawfully interfered with the processing of such applications, contrary to applicable law.

92.     DHS Defendants unlawfully and improperly have complied with DoD's instruction and have failed to process Plaintiffs' N-400 Applications for Naturalization in accordance with their obligations under law.

93.     Plaintiffs have been, and will continue to be, substantially and irreparably harmed by Defendants' unlawful and improper actions, for which there is no adequate remedy at law. Under the facts and circumstances of this case, the balance of the equities clearly favors Plaintiffs, and injunctive relief is in the public interest.

94.     Accordingly, Plaintiffs seek preliminary and permanent injunctive relief against the DHS Defendants: (i) to compel the DHS Defendants to comply with their statutory obligations pursuant to 8 U.S.C. § 1440 to process without further delay the N-400 Applications for Naturalization duly filed by Plaintiffs and the Class; and (ii) to compel the DHS Defendants to grant priority to, and expedite, the processing of the N-400 Applications for Naturalization duly filed by Plaintiffs and the Class to avoid further harm as the harm that has been caused by the unlawful processing suspension that has been imposed on such applications to date.

95.     Plaintiffs seek preliminary and permanent injunctive relief against the DoD

Defendants enjoining the DoD Defendants from interfering with the processing of the N-400

Applications for Naturalization duly filed by Plaintiffs and the Class.

96.     Plaintiffs further seek preliminary and permanent injunctive relief against the

Defendants enjoining them from taking any retaliatory actions against the Plaintiffs and the

Class.

<u>**Count III: Relief Pursuant to the Administrative Procedure Act**</u>

97.     Plaintiffs re-allege paragraphs one through eighty-four as if fully set forth herein.

98.     5 U.S.C. § 706(1) authorizes a court to "compel agency action unlawfully

withheld or unreasonably delayed."  DHS Defendants have unlawfully withheld and/or

unreasonably delayed the processing of the N-400 Applications for Naturalization duly filed by

Plaintiffs and the class contrary to the requirements of applicable law including 8 U.S.C. § 1440.

99.     Plaintiffs have a clear right to apply for naturalization pursuant to 8 U.S.C.

§ 1440, which provides an expedited pathway to citizenship.  Defendants have interfered with

that right and the only adequate remedy is to order DHS Defendants to resume processing

Plaintiffs' applications solely in accordance with existing naturalization criteria, law, and

regulations.

100.    Accordingly, Plaintiffs seek an order from the Court pursuant to 5 U.S.C. § 706(1)

compelling DHS Defendants: (i) to comply with their statutory obligations pursuant to 8 U.S.C.

§ 1440 to immediately act upon and process without further delay the N-400 Applications for

Naturalization duly filed by Plaintiffs and the Class; and (ii) to grant priority to, and expedite, the

processing of the N-400 Applications for Naturalization duly filed by Plaintiffs and the Class to

avoid further harm as the harm that has been caused by the unlawful processing suspension that has been imposed on such applications to date.

### Count IV: Mandamus

101.    Plaintiffs re-allege paragraphs one through eighty-four as if fully set forth herein.

102.    DHS Defendants unlawfully and improperly have failed to process the N-400 Applications for Naturalization duly filed by Plaintiffs and the Class in accordance with their obligations under law.

103.    28 U.S.C. § 1361 authorizes a court to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff" if the plaintiff can demonstrate that: (1) the plaintiff seeking mandamus has a clear right to the relief requested; (2) the defendant has a clear duty to perform the act in question; and (3) no other adequate remedy is available.

104.    Plaintiffs have a clear right to apply for naturalization pursuant to 8 U.S.C. § 1440, which provides an expedited pathway to citizenship.  Defendants have interfered with that right and the only adequate remedy is to order DHS Defendants to resume processing Plaintiffs' applications solely in accordance with existing naturalization criteria, law, and regulations.

105.    Accordingly, Plaintiffs seek issuance of a writ of mandamus compelling DHS Defendants: (i) to comply with their statutory obligations pursuant to 8 U.S.C. § 1440 to immediately act upon and process without further delay the N-400 Applications for Naturalization duly filed by Plaintiffs and the Class; and (ii) to grant priority to, and expedite, the processing of the N-400 Applications for Naturalization duly filed by Plaintiffs and the Class to

avoid further harm as the harm that has been caused by the unlawful processing suspension that has been imposed on such applications to date.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs, on behalf of themselves and the class, respectfully request that this Court:

1. Assume jurisdiction over this action;

2. Issue the declaratory judgment requested in Count I of this Complaint;

3. Grant the preliminary and permanent injunctive relief requested in Count II of this Complaint;

4. Grant the relief requested pursuant to the APA (Count III of this Complaint);

5. Issue the mandamus requested in Count IV of this Complaint;

6. Award Plaintiffs and the Class reasonable costs and attorneys' fees, including under the Equal Access to Justice Act;

7. Award such further relief as the Court deems just or appropriate.

Respectfully submitted this 24th day of May, 2017.

_____ /s/ Joseph J. LoBue _____
Joseph J. LoBue (D.C. Bar No. 484097)
Douglas W. Baruch (D.C. Bar No. 414354)
Jennifer M. Wollenberg (D.C. Bar No. 494895)
Neaha P. Raol* (D.C. Bar No. 1005816)
Webster R. M. Beary* (D.C. Bar No. 1041653)
Shaun A. Gates* (D.C. Bar No. 1034196)
Katherine L. St. Romain* (D.C. Bar No. 1035008)
Fried, Frank, Harris, Shriver & Jacobson LLP
801 17th Street, NW
Washington, D.C. 20006
Telephone:  (202) 639-7000
Facsimile:   (202) 639-7003
E-mail:  joseph.lobue@friedfrank.com

*Counsel for Plaintiffs*

*Application for admission to the bar of the United States District Court for the District of Columbia pending*