## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————————  )
                                                      )
KUSUMA NIO, *et al.*,                                 )
                                                      )
Plaintiffs,                                           )
                                                      )
v.                                                    )  Civil Action No. 17-00998 (ESH/RMM)
                                                      )
UNITED STATES DEPARTMENT                              )
OF HOMELAND SECURITY, *et al.*,                       )
                                                      )
Defendants.                                           )
———————————————————————  )

### MEMORANDUM OPINION

     Pending before the Court is Plaintiffs' request that the Court order Defendant United

States Citizenship and Immigration Service ("USCIS") to produce a May 17, 2018 USCIS

internal guidance ("May 2018 Guidance")[1] regarding military naturalization adjudication

procedures, and that the Court permit Plaintiffs to use the May 2018 Guidance as an exhibit to

their motion for summary judgment.  USCIS objects to that request, arguing that the May 2018

Guidance is not admissible because it is outside the scope of the administrative record, and that

the May 2018 Guidance contains sensitive and privileged information that should not be

disclosed to Plaintiffs or their counsel.  Judge Ellen S. Huvelle referred the parties' dispute

regarding the admissibility of the Guidance to the undersigned magistrate judge.  *See* 6/20/2018

Order, ECF No. 159.  Having reviewed the May 2018 Guidance *in camera* and after considering

the parties' submissions and applicable law, the undersigned concludes, for the reasons set forth

---

[1]  USCIS has advised the Court that the May 2018 Guidance has been updated; the Court's
references to the May 2018 Guidance in this opinion pertain to the most recent version of that
guidance.

below, that Plaintiffs are entitled to receive a redacted copy of the May 2018 Guidance for use in connection with summary judgment briefing.

## BACKGROUND

The complex factual background of the underlying action is set forth in detail in the Court's September 6, 2017 Memorandum Opinion denying Plaintiffs' request for a preliminary injunction. *See Nio v. U.S. Dep't of Homeland Sec.*, 270 F. Supp. 3d 49 (D.D.C. 2017). The undersigned will, however, briefly summarize the portions of the background and procedural history that are relevant to the pending dispute regarding the admissibility of the Guidance.

Plaintiffs are non-citizens who enlisted in the United States Army's Selected Reserve of the Ready Reserve through the United States Department of Defense's Military Accessions Vital to the National Interest ("MAVNI") program and have pending applications for naturalization. *See id.* at 49. They have sued USCIS and its Director, the Department of Homeland Security and its Acting Secretary, and the United States Department of Defense ("DOD") and its Secretary, raising a variety of claims under the Administrative Procedure Act ("APA"). *See* 2d Am. Compl., ECF No. 61. Plaintiffs allege, *inter alia*, that: (1) USCIS has acted arbitrarily and capriciously by requiring MAVNI applicants to undergo enhanced security screening prior to the adjudication of their naturalization applications; and (2) USCIS has unreasonably delayed its investigation, examination, and adjudication of MAVNI naturalization applications, in violation of Section 706(1) of the APA. *See Nio*, 270 F. Supp. 3d at 66; 2d Am. Compl. ¶¶ 152-73.

In response to a Court Order, USCIS filed a copy of a July 7, 2017 internal USCIS email, titled "Updated MAVNI N-400 Guidance," ("July 2017 Guidance"), that advised USCIS Field Offices that "pending and future MAVNI cases may not proceed to interview, approval, or oath until confirmation that all enhanced DoD security checks are completed." Decl. and Doc.

Produc. of Daniel Renaud ("July 2017 Renaud Decl.") at 25, ECF No. 23-1 ; *see also* 7/14/2017

Order, ECF No. 22 (ordering production of documents referenced in prior declaration).  USCIS

submitted the July 2017 Guidance as part of "a compilation of all final agency guidance provided

to the USCIS Field Offices and/or to the National Benefits Center by [Field Operations

Directorate] headquarters from February 28, 2017, through the present, setting national policies

regarding the processing of N-400 applications filed by MAVNI recruits."  July 2017 Renaud

Decl. at 3-4.  The July 2017 Guidance was filed on the public docket, and the body of that

Guidance contains no redactions.[2]

The Court has referred several issues to the undersigned for resolution, including a

referral to "work with the parties to minimize the delay between when DOD completes an MSSD

[military security suitability determination] and uploads it to the portal to share with USCIS, and

when USCIS begins to undertake the remaining steps of the naturalization process."  4/12/2018

Order, ECF No. 135.  As part of that referral, the undersigned ordered Defendants and their

counsel to "confer with USCIS about drafting an email or other communication from the field

directorate to the field offices that reinforces the July 7th Policy and reiterates that the processing

of naturalization applications, including scheduling naturalization interview for MAVNIs, should

not be delayed."  5/22/2018 Minute Order.  At a subsequent hearing on May 31, 2018,

Defendants asserted that such an email communication would be redundant and unnecessary,

because USCIS had recently circulated further guidance (the May 2018 Guidance) to USCIS

Field Offices.  *See* 7/13/2018 Resp. to Order of the Ct., ECF No. 166-1.  Defendants described

the May 2018 Guidance as a document that "addresses the processing of naturalization

---

[2]  Portions of the "to" and "from" lines of the emails forwarding and distributing the guidance were redacted.

applications," and explained that "[f]or all military naturalization cases, the guidance states that the offices will schedule naturalization interviews to occur within thirty days of the date on which all USCIS background checks are complete." *Id.* At that hearing, Plaintiffs sought the production of the May 2018 Guidance, and USCIS indicated that it would not provide the document to Plaintiffs absent a Court Order.

As a result of the issues raised at the May 31, 2018 hearing before the undersigned, by Order dated June 20, 2018, Judge Huvelle referred to the undersigned the parties' dispute regarding "the May 17, 2018 USCIS Guidance's admissibility as an appendix to plaintiffs' motion for summary judgment." 6/20/2018 Order, ECF No. 159. The undersigned requested briefing on the issue. *See* 6/21/2018 Minute Order. Defendants contend that: (1) Plaintiffs are not entitled to receive the May 2018 Guidance because it postdates and was not part of the decision-making process regarding the formulation of the July 2017 Guidance; (2) there is no basis to allow discovery or otherwise require USCIS to disclose non-record materials; and (3) the May 2018 Guidance contains privileged material that should not be disclosed to Plaintiffs. *See* Defs.' Mem. Regarding the Admissibility of the May 17, 2018 Internal Guidance Doc., ECF No. 162; Decl. of Daniel M. Renaud in Support of USCIS's Privilege Assertions Re Internal May 17, 2018 USCIS Guidance ("July 2018 Renaud Decl."), ECF No. 166-2. Plaintiffs assert that the May 2018 Guidance is relevant to several of their claims, including Plaintiffs' assertion that USCIS took arbitrary and capricious agency action, Plaintiffs' APA unreasonable delay claims, and Plaintiffs' constitutional claims. *See* Pls.' Resp. Regarding the Admissibility of the USCIS May 17, 2018 Internal Guidance Doc. ("Pls.' Resp.") at 6-10, ECF No. 165. Plaintiffs also challenge the adequacy of Defendants' privilege assertions and contend that any applicable privilege was likely waived. *See id.* at 10-12.

**ANALYSIS**

Plaintiffs' challenge to USCIS's failure to complete the adjudication of their naturalization applications pursuant to APA Section 706(1), on the grounds that it constitutes unreasonably delayed agency action, entitles Plaintiffs to rely upon material that is outside the scope of the administrative record. Determining whether USCIS has unreasonably delayed the investigation, examination, and adjudication of Plaintiffs' naturalization applications will require the Court to conduct "a fact intensive inquiry," applying the factors set forth in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 79-80 (D.C. Cir. 1984). *See Nio*, 270 F. Supp. 3d at 66; *see also Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) ("Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court."); *Hamandi v. Chertoff*, 550 F. Supp. 2d 46, 54 (D.D.C. 2008) (noting that "the determination of whether an agency's delay is unreasonable is a fact specific inquiry"). Judicial review of such claims "is not limited to the record as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record." *Nat'l Law Ctr. on Homelessness and Poverty v. U.S. Dep't of Veterans Affairs*, 842 F. Supp. 2d 127, 130 (D.D.C. 2012). Accordingly, the fact that the May 2018 Guidance will not be included in the administrative record does not render it inadmissible as an exhibit to Plaintiffs' motion for summary judgment.

The May 2018 Guidance contains information that may be germane to the Court's analysis of Plaintiffs' unreasonable delay claim. Evaluating the reasonableness of any delay in agency action "will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency."

*Mashpee Wampanoag Tribal Council, Inc.*, 336 F.3d at 1102. Defendants acknowledge that the May 2018 Guidance articulates policies and procedures governing the processing of MAVNI naturalization applications. Therefore, the May 2018 Guidance should shed light upon "the complexity of the task at hand," *id.*, and provide context for the parties' arguments regarding the reasonableness of USCIS processing times. Further, given that the July 2017 Guidance already is part of the record, reviewing the May 2018 Guidance will allow Plaintiffs and the Court to ascertain whether the more recent Guidance modifies or provides further details regarding the processing and adjudication requirements applicable to MAVNI naturalization applications or supersedes the July 2017 Guidance in any respect. Consequently, the May 2018 Guidance is precisely the type of document that Plaintiffs should be permitted to rely upon as support for their motion for summary judgment.

Notwithstanding its clear relevance to the APA unreasonable delay claim, the May 2018 Guidance could be withheld from Plaintiffs, and provided only to the Court for *in camera* review, if a privilege precludes its disclosure. USCIS asserts that the law enforcement privilege shields portions of the May 2018 Guidance from disclosure to Plaintiffs or the public. *See* July 2018 Renaud Decl. ¶¶ 6-12. In connection with that assertion of privilege, USCIS has submitted for *in camera* review a privilege log and annotated copy of the May 2018 Guidance reflecting the specific text over which it asserts the law enforcement privilege.[3] *See id.* ¶ 8; 6/28/2018 Minute Order (directing Defendants to submit additional documents asserting the privilege).

---

[3] Plaintiffs requested permission to file a response to the July 2018 Renaud Declaration, given that Defendants' initial filing did not indicate with specificity to what extent, and on what basis, USCIS asserted the law enforcement privilege. However, the undersigned declined to permit Plaintiffs to file an additional brief because the Court's *in camera* review of the relevant documents provided adequate information to evaluate USCIS's assertion of the law enforcement privilege.

The law enforcement privilege is a qualified privilege that allows the federal government to withhold "information that would be contrary to the public interest in the effective functioning of law enforcement." *A.N.S.W.E.R. Coal. v. Jewell*, 292 F.R.D. 44, 50 (D.D.C. 2013) (quoting *Tuite v. Henry*, 181 F.R.D. 175, 176 (D.D.C. 1998)). The privilege "serves to protect 'the integrity of law enforcement techniques and confidential sources, protects witnesses and law enforcement personnel, safeguards the privacy of individuals under investigation, and prevents interference with investigations.'" *Id.; see also In re Anthem, Inc. Data Breach Litig.*, 236 F. Supp. 3d 150, 159 (D.D.C. 2017).  To successfully invoke that privilege: (1) "the head of the department having control over the requested information" must formally assert the privilege; (2) the assertion of privilege must be based upon the official's "actual personal consideration" of the relevant documents; and (3) the official must specify in detail "the information for which the privilege is claimed, with an explanation why it properly falls within the scope of the privilege." *Landry v. F.D.I.C.*, 204 F.3d 1125, 1135 (D.C. Cir. 2000) (internal quotes omitted).

USCIS has formally asserted the law enforcement privilege by submitting the declaration of Daniel M. Renaud, Associate Director of the Field Operations Directorate at USCIS. Although Mr. Renaud is not the head of USCIS, he reports directly to the Director and has been delegated the authority to assert the law enforcement privilege on his behalf.  *See* July 2018 Renaud Decl. ¶¶ 1-2.  Mr. Renaud also is personally familiar with the May 2018 Guidance and the policies and procedures discussed therein.  *See id.* ¶¶ 3-5.  Accordingly, USCIS has established that Mr. Renaud is an official with sufficient responsibility to assert the privilege, and that he has based that assertion of privilege upon his personal consideration of the May 2018 Guidance.  *See Landry*, 204 F.3d at 1135-36 (concluding head of regional division had "sufficient rank" to assert law enforcement privilege and declining to require that agency head

directly assert the privilege). The declaration, privilege log, and proposed redactions provide sufficient detail for the Court to evaluate USCIS's assertion of the law enforcement privilege.

Determining whether the law enforcement privilege protects the information the government seeks to withhold requires courts to "weigh the public interest in nondisclosure against the [requesting party's] need for access to the privileged information.'" *Tuite v. Henry*, 98 F.3d 1411, 1418 (D.C. Cir. 1996) (quoting *In re Sealed Case*, 856 F.2d 268, 272 (D.C. Cir. 1988)) (internal quotation marks and modifications omitted). That analysis involves consideration of factors such as:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case.

*In re Sealed Case*, 856 F.2d at 272. The government bears the burden of proving that the balance favors nondisclosure. *See In re Anthem*, 236 F. Supp. 3d at 166.

Turning to the balancing test, USCIS has demonstrated that the public interest in nondisclosure outweighs Plaintiffs' need for access to some, but not all, of the information that USCIS proposes to redact. The disputed text describes aspects of the naturalization adjudication process including law enforcement techniques and processes such as: the types of information revealed through certain security checks; the external databases that are searched as part of the background screening process; questions USCIS employees may ask applicants in order to detect fraud and evaluate applicants' eligibility for immigration benefits; and information about the

techniques and procedures USCIS uses to perform security checks while processing naturalization applications. *See* July 2018 Renaud Decl. ¶¶ 7-11. As USCIS notes, disclosing such information "will risk circumvention or evasion of the law," *id.* ¶ 7, and could "provide an applicant for an immigration benefit a roadmap to evade such processes and procedures and conceal information that would otherwise make the applicant ineligible for the immigration benefit sought." *Id.* Given that Plaintiffs have pending naturalization applications, disclosing that information to them carries some of the same risks as disclosing information about pending investigations to the defendant in a criminal case, which would implicate concerns like those at issue in the fifth and sixth *Sealed Case* factors. *See generally Sealed Case*, 856 F.2d at 273. On the other hand, Plaintiffs have brought a "non-frivolous action" in good faith, the case is likely to be resolved on dispositive motions without discovery, and, to advance their APA unreasonable delay claim, Plaintiffs need to know information about the USCIS process for investigating, evaluating, and adjudicating MAVNI naturalization applications. *See id.* (recommending that courts consider such issues under factors eight through ten).

Having weighed the relevant factors, the Court concludes that the law enforcement privilege protects all information that would identify the document path or link to the internal USCIS network location at which the May 2018 Guidance resides. USCIS has asserted that privilege to justify withholding the single line of text that appears at the bottom of each page of the May 2018 Guidance. *See* Privilege Log (submitted *in camera*). Disclosing these internal network links risks compromising USCIS's systems, and Plaintiffs have no cognizable interest in receiving that information. Therefore, the balance clearly favors nondisclosure.

Evaluating the privilege claim for the remaining proposed redactions of information that is relevant to Plaintiffs' claims requires a page-by-page assessment of the respective interests of

Plaintiffs and Defendants.  The chart below reflects the conclusions the Court has drawn after

conducting that analysis.  Each finding that the law enforcement privilege applies is based on a

determination that disclosing the relevant text would risk harm to USCIS and its law

enforcement partners that outweighs Plaintiffs' need to receive the withheld information.  Given

that the May 2018 Guidance is a non-public document that describes internal agency procedures

for evaluating and adjudicating naturalization applications, the Court will designate the entire

document as "Protected Material" and subject to the limitations on the use and distribution of

"Protected Material" that are set forth in the Protective Order governing this case.  *See* Order

Granting Mot. for Protective Order, ECF No. 123.  Where Plaintiffs' needs outweigh the public

interest in protecting sensitive law enforcement information contained within the May 2018

Guidance, the "Protected Material" designation will mitigate the risks of disclosure.

| **Page** | **Description** | **Law-Enforcement Privileged?** | **Rationale** |
|---|---|---|---|
| 3 | Discussion of techniques for screening applicants for fraud. | YES | Disclosure would risk circumvention of the law and undermine USCIS's efforts to prevent and detect fraud.  Possessing this information would not advance Plaintiffs' claims. |
| 4 | Discussion of techniques for finding derogatory information including external databases searched. | YES | Disclosure would risk circumvention of the law and undermine USCIS's efforts to identify derogatory information.  Possessing this information would not advance Plaintiffs' claims. |
| 8 | Description of security checks and additional steps applicable to erroneous filings. | YES | Although disclosure carries only minimal risks, Plaintiffs have no need to receive this information, because the information would neither advance nor provide relevant background information for Plaintiffs' claims. |

| Page | Description | Law-Enforcement Privileged? | Rationale |
|------|-------------|-----------------------------|-----------|
| 10-11 | Description of steps, including security screenings, that the National Benefits Center ("NBC") takes to process applications. | NO | Detailed information regarding NBC processing of applications is essential to Plaintiffs' unreasonable delay claim. Plaintiffs' need outweighs the interest in withholding details regarding the types of security screenings performed in this process. The designation as "Protected Material" reduces the risks of disclosure. |
| 12 | Bulleted list of steps involved in Field Office Processing of applications, including security screenings. | NO | Detailed information regarding Field Office processing of applications is essential to Plaintiffs' unreasonable delay claim. Plaintiffs' need outweighs the interest in withholding details regarding the types of security screenings performed in this process. The designation as "Protected Material" reduces the risks of disclosure. |
| 12 | Description of review undertaken when applicants have pending removal proceedings. | YES | Disclosure would undermine USCIS's efforts to develop appropriate response to removals. Plaintiffs have no need to receive this information, because the information would neither advance nor provide relevant background information for Plaintiffs' claims. |
| 19 | Description of review and further investigatory steps undertaken in response to security check results | YES | Disclosure would risk circumvention of law by revealing how USCIS responds to derogatory information and security screening checks. Plaintiffs have no need to receive this information, because the information would neither advance nor provide relevant background information for Plaintiffs' claims. |
| 19 | Routing and transmission contact information for requesting external security check | YES | Although disclosure carries only minimal risks, Plaintiffs have no need to receive this information, because the information would neither advance nor provide relevant background information for Plaintiffs' claims. |

| Page | Description | Law-Enforcement Privileged? | Rationale |
|---|---|---|---|
| 20-21 | Description of fingerprint check procedures (Section C-2) | NO | Detailed information regarding NBC processing of applications is essential to Plaintiffs' unreasonable delay claim. Plaintiffs' need outweighs the interest in withholding details regarding the fingerprinting process. The designation as "Protected Material" reduces the risks of disclosure. |
| 21-22 | Description of process used when applicants fail to appear for fingerprinting (Section C-3) | YES | Although disclosure carries only minimal risks, Plaintiffs have no need to receive this information. As there is no indication that failure to appear for fingerprinting has affected timing of adjudication of Plaintiffs' applications, this information would neither advance nor provide relevant background information for Plaintiffs' claims. |
| 22 | Description of process used when applicants' fingerprints expire (Section C-4) | NO | Plaintiffs need to know information regarding issues that could delay adjudication of their applications to fully litigate their unreasonable delay claim. That need outweighs the interest in withholding details regarding fingerprinting process. The designation as "Protected Material" reduces the risks of disclosure. |

Plaintiffs contend that USCIS may have waived the law enforcement privilege by voluntarily disclosing the existence of the May 2018 Guidance and describing its contents in detail. Pls.' Resp. at 11. The law enforcement privilege can be waived through "voluntary disclosure of a significant portion of the information claimed to be privileged." 26A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 5692 (1st ed.); *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1126 (7th Cir. 1997) ("We may assume that like other privileges the [law enforcement] privilege can be 'waived'" through "a voluntary surrender."); *cf. Peck v. United States*, 514 F. Supp. 210, 212 (S.D.N.Y.), on reargument, 522 F. Supp. 245

(S.D.N.Y. 1981) (finding the government waived the official information privilege after it released a summary of an investigation that revealed a significant portion of a secret report). However, Defendants' prior descriptions of the May 2018 Guidance do not disclose the contents of the text that fall within the scope of the law enforcement privilege. Nor did USCIS's submission of the July 2017 Guidance disclose the substance of the privileged material in the May 2018 Guidance. Finally, the May 2018 Guidance is an internal agency document, and nothing in the record suggests that USCIS has disclosed the otherwise privileged information on its website or through other public means. Therefore, USCIS has not waived the law enforcement privilege.

Finally, USCIS proposes to redact portions of the May 2018 Guidance that are not relevant to Plaintiffs' claims. This information includes text on pages 2, 5, 9, 10, 17-19, and 22-25 of the May 2018 Guidance. The text USCIS seeks to redact addresses topics wholly unrelated to the processing and adjudication of MAVNI naturalization applications. Those redactions are proper because Plaintiffs have no right to review internal USCIS documents that have no bearing on their APA and constitutional claims.[4]

## CONCLUSION

For the foregoing reasons, and as set forth in the Order accompanying this Memorandum Opinion, the Court concludes that the May 2018 Guidance is admissible and shall be designated as "Protected Material" and subject to the limitations on the use and distribution of "Protected Material" that are set forth in the Protective Order governing this case, and that USCIS therefore

---

[4] USCIS also asserts that the law enforcement privilege provides an alternative basis for redacting portions of this text. The Court need not evaluate that claim of privilege, because the text is properly redacted in its entirety due to its lack of relevance to Plaintiffs' claims.

must produce to Plaintiffs a copy of the May 2018 Guidance that has been redacted in a manner consistent with the foregoing analysis.

Date: July 16, 2018

_____
ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE