UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KUSUMA NIO, <u>et al.</u>,                    )
                                              )
            Plaintiffs,                       )
                                              )
    v.                                        )        Civil Action No. 17-0998 (PLF)
                                              )
UNITED STATES DEPARTMENT OF                   )
HOMELAND SECURITY, <u>et al.</u>,             )
                                              )
            Defendants.                       )
                                              )

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs Kusuma Nio, <u>et al.</u>, and defendants, the United States Department of

Homeland Security, <u>et al.</u>, have filed a Joint Motion for Approval of Settlement Regarding

Plaintiffs' Claims for Equal Access to Justice Act Attorneys' Fees and Costs ("Joint Motion for

Attorneys' Fees") [Dkt. No. 337].  The Court will grant the parties' Joint Motion for Attorneys'

Fees, approve the parties' Settlement Agreement [Dkt. No. 337-1], and award attorneys' fees and

costs in the amount of $2,750,000.[1]

I. BACKGROUND

The Court's prior opinions set out the detailed background of this case.  <u>See</u> <u>Nio</u>

<u>v. U.S. Dep't of Homeland Sec.</u> ("<u>Nio I</u>"), 270 F. Supp. 3d 49 (D.D.C. 2017) (denying

preliminary injunctive relief); <u>Nio v. U.S. Dep't of Homeland Sec.</u> ("<u>Nio IV</u>"), 385 F.

---

[1]     The Court has determined that it is unnecessary to hold a hearing to approve the
parties' Joint Motion for Attorneys' Fees.  <u>See</u> FED. R. CIV. P. 23(h)(3).

Supp. 3d 44 (D.D.C. 2019) (granting in part plaintiffs' motion for partial summary judgment and denying defendants' cross-motion for summary judgment).[2]

In brief, the Secretary of Defense authorized the creation of the Military Accessions Vital to the National Interest ("MAVNI") program in 2008. The MAVNI program permits non-citizens who are not lawful permanent residents to enlist in the U.S. military if it is determined to be vital to the national interest. See Nio IV, 385 F. Supp. 3d at 47. Certain individuals who enlist in the Selected Reserve of the Ready Reserve of the U.S. military ("Selected Reserve") through the MAVNI program are eligible for naturalization under 8 U.S.C. § 1440. See id. That statute permits non-citizens who have honorably served as members in the Selected Reserve or in an active-duty status in the military during a designated period of military hostilities (i.e., "qualifying military service") to become U.S. citizens. See id. To determine eligibility for naturalization, U.S. Citizenship and Immigration Services ("USCIS") requires an applicant to submit, along with a Form N-400 application for naturalization, a Form N-426 completed by an official within the U.S. Department of Defense ("DOD") certifying the applicant's qualifying military service. See id. at 50. Starting in early 2017, USCIS began to delay the processing of Form N-400s from MAVNI enlistees who were serving in the Selected Reserve but, pending the results of the DOD's enhanced security screening, had not yet been shipped to basic training. See Nio I, 270 F. Supp. 3d at 56; Nio IV, 385 F. Supp. 3d at 51-52.

On May 24, 2017, plaintiffs filed a class action complaint in this Court alleging that "USCIS and DOD were unlawfully delaying the processing of MAVNI naturalization applications due to improper interference in the process by DOD." Nio IV, 385 F. Supp. 3d

---

[2]      Judge Ellen Segal Huvelle presided over this case until her retirement, at which time the case was reassigned to the undersigned.

2

at 55.  Plaintiffs sought declaratory relief, preliminary and permanent injunctive relief, relief

pursuant to the Administrative Procedure Act, and issuance of a writ of mandamus.  See

Complaint and Prayer for Declaratory, Preliminary and Permanent Injunctive, Administrative

Procedure Act, and Mandamus Relief [Dkt. No. 1] at 26-30.  On September 6, 2017, the Court

denied plaintiffs' motion for preliminary injunctive relief.  See Nio I, 270 F. Supp. 3d.  On

October 13, 2017, DOD issued guidance (the "October 13 Guidance") that would delay the

certification of a Form N-426 until a MAVNI's applicable screening and suitability requirements

had been completed.  See Nio v. U.S. Dep't of Homeland Sec. ("Nio II"), 323 F.R.D. 28, 31

(D.D.C. 2017).  Following issuance of the October 13 Guidance, the Court granted plaintiffs

leave to file an amended complaint, an amended motion for class certification, and a motion for

preliminary injunctive relief confined to the narrow issue of DOD's position regarding

Form N-426 outlined in the October 13 Guidance.  See id.

        On October 27, 2017, the Court certified a class consisting of all persons who,

before October 13, 2017, enlisted in the Selected Reserve through the MAVNI program; served

honorably in the Selected Reserve or in an active-duty status, received from the U.S. military

executed Form N-426s certifying their honorable service; submitted N-400 Applications for

Naturalization to USCIS; and had the processing or final adjudication of their naturalization

applications withheld or delayed.  See Nio II, 323 F.R.D. at 31.  The same day, the Court also

granted plaintiffs' renewed motion for preliminary injunctive relief and barred defendants from

implementing a portion of the DOD's October 13, 2017 guidance.  See October 27, 2017 Order

[Dkt. No. 74].

        On May 22, 2019, the Court granted in part plaintiffs' motion for summary

judgment and denied defendants' cross-motion for summary judgment.  See Nio IV, 385 F.

Supp. 3d at 69.  On August 20, 2020, the Court converted the preliminary injunction issued on October 27, 2017 into a permanent injunction and entered judgment for plaintiffs.  See Nio v. U.S. Dep't of Homeland Sec. ("Nio V"), Civ. Action No. 17-0998, 2020 WL 6266304, at *1 (D.D.C. Aug. 20, 2020).  The injunction prohibits defendants from implementing "Section III of DOD's October 13, 2017 Guidance" and from "decertifying, rescinding, recalling, revoking, or otherwise invalidating plaintiffs' or the class'[s] existing and duly issued Form N-426s, except as related to the conduct of a class member and based on sufficient grounds generally applicable to members of the military for re-characterization of service."  Id.

On April 9, 2021, plaintiffs filed a Motion for Attorneys' Fees, Costs, and Expenses Pursuant to the Equal Access to Justice Act ("Motion for Attorneys' Fees") [Dkt. No. 319].  Defendants filed a response on May 29, 2021, see Defendants' Opposition to Plaintiffs' Motion for Attorneys' Fees, Costs, and Expenses Pursuant to the Equal Access to Justice Act [Dkt. No. 326], and plaintiffs filed a reply on July 1, 2021.  See Plaintiffs' Reply in Support of Motion for Attorneys' Fees, Costs, and Expenses Pursuant to the Equal Access to Justice Act [Dkt. No. 327].  On March 25, 2022, the Court referred the case to mediation, and thereafter, the parties participated in two mediation session conducted by Magistrate Judge G. Michael Harvey.  On October 18, 2022, the parties jointly filed the motion currently before the Court for approval of a settlement regarding attorneys' fees.  See Joint Motion for Attorneys' Fees.

## II. DISCUSSION

### A. The Equal Access to Justice Act

Plaintiffs seek an award of attorneys' fees and costs under the Equal Access to Justice Act ("EAJA" or the "Act"), 28 U.S.C. § 2412.  Section 2412(d)(1)(A) of the EAJA

provides for the recovery of attorneys' fees and costs to a prevailing party in non-tort cases against the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." Id. § 2412(d)(1)(A). There is a cap on the hourly rate that may be charged under this subsection of the statute. See 28 U.S.C. § 2412(d)(2)(A). Plaintiffs also cite Section 2412(b), which permits a court to award reasonable attorneys' fees and costs to the prevailing party in any civil action against the United States "to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." Id. § 2412(b). Under that provision, and consistent with the common law, the United States may be liable for attorneys' fees and costs if it has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." F.D. Rich Co. v. U.S. ex rel. Indus. Lumber Co., 417 U.S. 116, 129 (1974); see Am. Hosp. Ass'n v. Sullivan, 938 F.2d 216, 219 (D.C. Cir. 1991).

Plaintiffs maintain that there is no statutory ceiling on the hourly rate used to calculate fees under Section 2412(b) if there is a finding of bad faith. See Gray Panthers Project Fund v. Thompson, 304 F. Supp. 2d 36, 38 (D.D.C. 2004) ("No statutory ceiling on the hourly rate used to calculate fees under § 2412(b) exists; thus, an award of attorney's fees for bad faith can be calculated at market rates."). Defendants do not address this issue in the Joint Motion for Attorneys' Fees. The Settlement Agreement itself references the EAJA and cites 28 U.S.C. § 2412 without mentioning any particular subsection of the Act. See Settlement Agreement [Dkt. No. 337-1]. The Court sees no need to address the issue of bad faith.

### B. Notice and Opportunity for Class Members to Object

Under the Federal Rules of Civil Procedure, a court may award attorneys' fees and costs that are authorized by law or by the parties' agreement. FED. R. CIV. P. 23(h). Notice

of the motion for attorney' fees must be "directed to class members in a reasonable manner,"
FED. R. CIV. P. 23(h)(1), so that a class member has an opportunity to object to the motion.  <u>See</u>
FED. R. CIV. P. 23(h)(2).  Upon filing the Joint Motion for Attorneys' Fees in this case, class
counsel published the joint motion and the Settlement Agreement on the website used to
communicate with class members throughout the litigation:
https://dcfederalcourtmavniclasslitigation.org/.  <u>See</u> Joint Motion for Attorneys' Fees at 4.
Furthermore, plaintiffs filed a supplemental memorandum reporting that, as of
November 7, 2022, no class members had commented on or objected to the motion for attorneys'
fees.  <u>See</u> Notice of No Objections to the Settlement Regarding Plaintiffs' Claims for Equal
Access to Justice Act Attorneys' Fees and Costs [Dkt. No. 338] at 2.  In view of the above, the
Court finds that class counsel has provided notice to class members sufficient to satisfy the
demands of Rule 23(h)(1).  <u>See</u> <u>Cobell v. Norton</u>, 407 F. Supp. 2d 140, 147-48 (D.D.C. 2005)
(finding that providing notice to class members via the website used "as the primary vehicle to
communicate" with class members throughout the litigation, in addition to publishing notice in
several newspapers, met the requirements of Rule 23(h)(1)).

## C.  Reasonableness of Fees and Costs Requested

"In a certified class action, the court may award reasonable attorneys' fees and
nontaxable costs that are authorized by law or by the parties' agreement."  FED. R. CIV. P. 23(h).
Rule 23(h) does not itself "create new grounds for an award of attorney fees," FED. R. CIV.
P. 23(h) advisory committee's note to 2003 amendment, "leaving the courts to continue to
develop the standards that will be applied."  7B CHARLES ALAN WRIGHT, ARTHUR R. MILLER &
MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1803.1 (3d ed. 2021).

When awarding attorneys' fees, federal courts "have a duty to ensure that claims for attorneys' fees are reasonable in light of the results obtained." In re Black Farmers Discrimination Litig., 953 F. Supp. 2d 82, 87 (D.D.C. 2013) (internal citations omitted). Where, as here, the parties have reached an agreement on the award of attorneys' fees, the court may give consideration and weight to that agreement, but "the court remains responsible to determine a reasonable fee." FED. R. CIV. P. 23(h) advisory committee's note to 2003 amendment; see In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011) ("[C]ourts have an independent obligation to ensure that the award . . . is reasonable, even if the parties have already agreed to an amount."); see also, e.g., Alvarez v. Keystone Plus Constr. Corp., 303 F.R.D. 152, 166 (D.D.C. 2014); Wells v. Allstate Ins. Co., 557 F. Supp. 2d 1, 6 (D.D.C. 2008).

The determination of a reasonable fee under the EAJA is governed by the approach first articulated by the Supreme Court in Hensley v. Eckerhart, 461 U.S. 424 (1983). See Comm'r, I.N.S. v. Jean, 496 U.S. 154, 161 (1990) (noting that once the threshold requirements for eligibility of attorneys' fees under the EAJA are met, "the district court's task of determining what fee is reasonable is essentially the same as that described in Hensley"); see also Anthony v. Sullivan, 982 F.2d 586, 589 (D.C. Cir. 1993). Using the lodestar method, the Court begins by "determining the amount of a reasonable fee," that is, "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. at 433. In plaintiffs' Motion for Attorneys' Fees and accompanying declaration, filed before the parties reached a settlement regarding attorneys' fees and costs, plaintiffs represent that class counsel devoted 15,325.5 hours working on this case, not including the time related to that motion or the parties' Joint Motion for Attorneys' Fees. See Declaration of Jennifer M. Wollenberg ("Wollenberg Decl.") [Dkt. No. 319-2] ¶¶ 5, 40. Given the scope of

plaintiffs' claims and the duration of this litigation, as detailed in Ms. Wollenberg's declaration, the Court finds reasonable the amount of time spent for this representation. See Animal Legal Def. Fund, Inc. v. Perdue, 292 F. Supp. 3d 315, 318-19 (D.D.C. 2018).

      With regard to a "reasonable hourly rate," plaintiffs request fees based on the hourly rates set out in the Legal Services Index Laffey Matrix ("Laffey Matrix"). See Laffey Matrix, http://www.laffeymatrix.com/see.html (last visited Dec. 21, 2022); see also DL v. D.C., 924 F.3d 585, 589-90 (D.C. Cir. 2019) (explaining the history of the Laffey Matrix and noting the D.C. Circuit's previous endorsement of the matrix); Salazar v. D.C., 809 F.3d 58, 65 (D.C. Cir. 2015) ("[T]he district court's point that the [Legal Services Index]-adjusted matrix is probably a conservative estimate of the actual cost of legal services in [the Washington, D.C.] area, does not appear illogical." (internal quotations omitted)).[3]  In view of the complexity of this multi-year litigation – which has involved extensive motions practice, including motions for preliminary injunction, class certification, and summary judgment, as well as mediation and settlement negotiations – and the experience and skill of counsel, the Laffey Matrix reflects a reasonable hourly rate for plaintiffs' counsel. See Hensley v. Eckerhart, 461 U.S. at 433; see also, e.g., Alvarez v. Keystone Plus Constr. Corp., 303 F.R.D. at 166.

      Applying the Laffey Matrix to the number of hours reasonably expended on the litigation by plaintiffs' counsel yields a lodestar amount of $9,757,453 in attorneys' fees. See Wollenberg Decl. ¶¶ 5, 40; Motion for Attorneys' Fees, Costs, and Expenses Pursuant to the Equal Access to Justice Act, Ex. 23 [Dkt. No. 319-28] (calculating fees based on class counsel's

---

[3]    The EAJA allows a maximum rate of $125 per hour plus an upward cost-of-living adjustment for claims for attorneys' fees brought under Section 2412(d)(1)(A). See 28 U.S.C. § 2412(d)(2)(A). This is substantially lower than counsel's standard hourly rate. See Wollenberg Decl. ¶ 14 (noting that at class counsel's standard hourly rate, their time would be valued at more than $13 million).

hours and the hourly rates listed in the <u>Laffey</u> Matrix).  The Court finds that the proposed settlement amount of $2,750,000 in attorneys' fees and costs agreed upon by the parties adequately reflects plaintiffs' sterling success and is a reasonable and fair award.  <u>See</u> <u>Little v. Wash. Metro. Area Transit Auth.</u>, 313 F. Supp. 3d 27, 39 (D.D.C. 2018) (awarding attorneys' fees where class counsel "demonstrated exceptional skill in litigating an extremely difficult case and obtaining class certification for liability purposes," the case lasted several years and was complex, and the effort ultimately resulted in substantial relief to class members).[4]

### III.  CONCLUSION

For the foregoing reasons, the Court will grant the parties' Joint Motion for Attorneys' Fees and award $2,750,000 in attorneys' fees and costs to plaintiffs.  Accordingly, it is hereby

ORDERED that the parties' Joint Motion for Approval of Settlement Regarding Plaintiffs' Claims for Equal Access to Justice Act Attorneys' Fees and Costs [Dkt. No. 337] is GRANTED; it is

FURTHER ORDERED that the parties' Settlement Agreement [Dkt. No. 337-1] is APPROVED; it is

FURTHER ORDERED that the United States shall pay counsel for plaintiffs $2,750,000 in attorneys' fees and costs; and it is

---

[4]    Included within this decision, the Court finds reasonable the $34,147.22 in costs incurred by plaintiffs in litigating this action.  <u>See</u> Wollenberg Decl. ¶ 51; <u>see</u> <u>also</u>, <u>e.g.</u>, <u>In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.</u>, 4 F. Supp. 3d 94, 113-14 (D.D.C. 2013).

FURTHER ORDERED that plaintiffs' Motion for Attorneys' Fees, Costs, and Expenses Pursuant to the Equal Access to Justice Act [Dkt. No. 319] is DENIED as moot.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 12/21/22